CENTER FOR DISABILITY ACCESS
Raymond Ballister Jr., Esq., SBN 111282
Russell Handy, Esq., SBN 195058
Amanda Seabock, Esq., SBN 289900
Zachary Best, Esq., SBN 166035
Mail: 8033 Linda Vista Road, Suite 200
San Diego, CA 92111
(858) 375-7385; (888) 422-5191 fax
amandas@potterhandy.com
        Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Rafael Arroyo**<br><br>      Plaintiff,<br><br>**v.**<br><br>**CPLG Properties L.L.C.,** A Delaware Limited Liability Company; **Corepoint TRS L.L.C.,** a Delaware Limited Liability Company; **LQ Management L.L.C.,** a Delaware Limited Liability Company;<br><br>      Defendants, | **Case No**. 8:20-cv-02450-DOC-DFM<br><br>**First Amended Complaint For Damages And Injunctive Relief For Violations Of:** Americans With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Rafael Arroyo complains of CPLG Properties L.L.C., a Delaware Limited Liability Company; Corepoint TRS L.L.C., a Delaware Limited Liability Company; LQ Management L.L.C., a Delaware Limited Liability Company and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. He is substantially limited in his ability to walk. He is a paraplegic. He uses a

1

wheelchair for mobility.

2.   Defendant CPLG Properties L.L.C., a Delaware Limited Liability Company; Corepoint TRS L.L.C., a Delaware Limited Liability Company; owns the La Quinta Inn & Suites located at 3 Centerpointe Dr., La Palma, California currently and at all times relevant to this complaint. Defendant LQ Management L.L.C., a Delaware Limited Liability Company operates the Hotel currently and at all times relevant to this complaint.

3.   Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION:**

4.   The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

5.   Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

6.   Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is

First Amended Complaint                          8:20-cv-02450-DOC-DFM

located in this district and that Plaintiff's cause of action arose in this district.

**PRELIMINARY STATEMENT**

7.   This is a lawsuit challenging the reservation policies and practices of a place of lodging. Plaintiff does not know if any physical or architectural barriers exist at the hotel and, therefore, is not claiming that that the hotel has violated any construction-related accessibility standard. Instead, this is about the lack of information provided on the hotel's reservation website that would permit plaintiff to determine if there are rooms that would work for him.

8.   After decades of research and findings, Congress found that there was a "serious and pervasive social problem" in America: the "discriminatory effects" of communication barriers to persons with disability. The data was clear and embarrassing. Persons with disabilities were unable to "fully participate in all aspects of society," occupying "an inferior status in our society," often for no other reason than businesses, including hotels and motels, failed to provide information to disabled travelers. Thus, Congress decided "to invoke the sweep of congressional authority" and issue a "national mandate for the elimination of discrimination against individuals with disabilities," and to finally ensure that persons with disabilities have "equality of opportunity, full participation, independent living" and self-sufficiency.

9.   As part of that effort, Congress passed detailed and comprehensive regulations about the design of hotels and motels. But, as importantly, Congress recognized that the physical accessibility of a hotel or motel means little if the 61 million adults living in America with disabilities are unable to determine which hotels/motels are accessible and to reserve them. Thus, there is a legal mandate to provide a certain level of information to disabled travelers.

10.  But despite the rules and regulations regarding reservation procedures,

First Amended Complaint                         8:20-cv-02450-DOC-DFM

a 2019 industry article noted that: "the hospitality sector has largely overlooked the importance of promoting accessible features to travelers."

11. These issues are of paramount important. Persons with severe disabilities have modified their own residences to accommodate their unique needs and to ameliorate their physical limitations. But persons with disabilities are never more vulnerable than when leaving their own residences and having to travel and stay at unknown places of lodging. They must be able to ascertain whether those places work for them.

**FACTUAL ALLEGATIONS:**

12. Due to plaintiff's disability, he is unable to, or seriously challenged in his ability to, stand, move, reach objects mounted at heights above his shoulders, transfer from his chair to other equipment, and maneuver around fixed objects.

13. Thus, Plaintiff needs an accessible guestroom, and he needs to be given information about accessible features in hotel rooms so that he can confidently book those rooms and travel independently and safely.

14. Plaintiff wanted to take a staycation in September of 2020 and then, more recently, in August of 2021 in the La Palma, California, area.

15. He had tremendous difficulty in finding a hotel that provided enough information about accessibility features that would permit him to independently assess whether the rooms worked for him.

16. Among the hotels he was considering and would have liked to book was the La Quinta Inn & Suites located at 3 Centerpointe Dr., La Palma, California because this hotel was at a desirable price and location.

17. But, because plaintiff could not find sufficient accessibility information on reservation websites—he originally examined the expedia.com site and then the hotel's own website—he was deterred from booking his hotel.

4

18. On or about March 2, 2021, plaintiff went to the La Quinta Inn & Suites reservation website at https://www.wyndhamhotels.com/laquinta/la-palma-california/la-quinta-buena-park/overview? to book a room if he could find one that was accessible to him.

19. This website reservation site is either maintained and operated by the defendant or is run by a third party on the defendant's behalf. It is the official online reservation system for this hotel.

20. Plaintiff found that there was insufficient data or details about the hotel or any of the accessible guestrooms to give him the ability to independently assess whether they worked for him.

21. There were a couple sources of information on the website that provided information about the accessible features. But these areas provided very little in the way of actual information and detail.

22. For example, under a general accessibility tab on the website, the hotel has a laundry list of "Accessible" features wherein it simply identified in bulleted fashion each area claimed to be accessible, e.g., "Accessible Business Center," "Accessible Car Self-Park," "Accessible Fitness Center," "Accessible Front Desk," etc.

23. But this information only identifies accessible features and does not (except in just one case) describe or detail those accessible features and certainly does not provide the plaintiff (or any wheelchair-using guest) with the ability to independently assess whether the hotel works for him.

24. Just about *every* hotel has a business center, concierge desk, elevators, parking, etc. All the hotel did here was to compile a list of public spaces at the hotel and slap the naked label "accessible" on it. This certainly does not meet the ADA requirement.

25. Merely labelling something "accessible" is a conclusion or opinion and does not permit an independent assessment but require a wheelchair user to

First Amended Complaint                              8:20-cv-02450-DOC-DFM

hope that the hotel knows what it is talking about.

26. This meager information falls far short of what the ADA requires and does not even come close to meeting the ADA requirement that hotels must not only identify but "*describe* accessible features in the hotels and guest rooms offered through its reservations service *in enough detail* to reasonably permit individuals with disabilities to *assess independently* whether a *given* hotel or guest room meets *his or her* accessibility needs." 28 C.F.R. 36.302(e)(1)(ii) (emphasis added to key words).

27. Turning to the information related to the actual accessible guestrooms, the hotel provides a description:



28. Clocking on the green colored text that reads: "Room Details and Accessible Amenities," the reservation website takes a guest to a little longer list that clarifies and adds some information:

First Amended Complaint                    8:20-cv-02450-DOC-DFM



**1 King Bed, Mobility/Hearing Accessible Room, Non-Smoking**

### ♿ Accessible Amenities

- Accessible Bathroom
- Adjustable Height Hand-Held Shower Wand
- Bathtub Grab Bars
- Bedroom is Wheelchair Accessible
- Portable Bathtub Seats
- Vibrating Alarm (available upon request)
- Visual Emergency Alarm

### Amenities

- Bathroom Grab Bars
- Bathtub Seat
- Coffee/Tea Maker
- Free WiFi (high-speed)
- Free WiFi (high-speed)
- Hair Dryer
- HDTV
- High-Speed Internet

29. There is some description and detail here about the bathtub (seats, grab bars, hand-held shower wand) but there is no information at all about the accessibility of the bed, accessibility of the toilet seat, or accessibility of the sink.

30. Plaintiff, like any wheelchair user, simply needs to know some basic information (actual data, not adjectives) about these core features so that he can independently assess whether the hotel room works for him.

First Amended Complaint                                    8:20-cv-02450-DOC-DFM

31. Plaintiff does not need an exhaustive list of accessibility features. Plaintiff does not need an accessibility survey to determine of a room works for him. Plaintiff, like the vast majority of wheelchair users, simply needs to know whether the core things about a guestroom work for him, i.e., bed, sink, toilet and be described in enough detail to permit him to independently assess that the room works for him and that he can book with confidence.

32. Because the defendant has failed to identify and describe—and/or failed to provide the necessary information to the third party operator of the website reservation system—the core accessibility features in enough detail to reasonably permit individuals with disabilities to *assess independently* whether a given hotel or guest room meets his accessibility needs, the defendant fails to comply with its ADA obligations and the result is that the plaintiff is unable to engage in an online booking of the hotel room with any confidence or knowledge about whether the room will actually work for him due to his disability.

33. Plaintiff lives less than 20 minutes from the hotel and is frequently in the area. Additionally, Plaintiff frequents a wide range of businesses to determine if they have complied with the anti-discrimination mandates of the ADA.

34. As a veteran ADA tester, Plaintiff is aware that he needs to return to the hotel website and to patronize the hotel in order to have standing to see that the hotel comes into compliance with the ADA's mandate regarding its reservation policies. Thus, plaintiff will use the hotel's website reservation system to book a room and travel to the La Quinta Inn & Suites when it has been represented to him that the hotel's website reservation system is accessible. Plaintiff will be discriminated against again, i.e., be denied his lawfully entitled access, unless and until the defendant is complies with the law.

35. Plaintiff would patronize this hotel but is deterred from doing so because of the lack of detailed information through the hotel's reservation system.

36. Plaintiff has reason and motivation to use the defendant's hotel reservation and to stay at the defendant's hotel in the future. Among his reasons and motivations are to assess these policies and facilities for compliance with the ADA and to see his lawsuit through to successful conclusion that will redound to the benefit of himself and all other similarly situated.

37. Plaintiff routinely revisits and uses the facilities and accommodations of places he has sued to confirm compliance and to enjoy standing to effectuate the relief promised by the ADA.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

38. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

39. Under the ADA, it is an act of discrimination to fail to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges advantages or accommodations to person with disabilities unless the entity can demonstrate that taking such steps would fundamentally alter the nature of those goods, services, facilities, privileges advantages or accommodations. See 42 U.S.C. § 12182(B)(2)(A)(ii).

40. Specifically, with respect to reservations by places of lodging, a defendant must ensure that its reservation system, including reservations

made by "any means," including by third parties, shall:

      a. Ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;

      b. Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs; and

      c. Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems.

41. Here, the defendant failed to modify its reservation policies and procedures to ensure that it identified and described accessible features in the hotels and guest rooms in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs and failed to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms.

## II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

42. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this

complaint.  The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California.  Cal. Civ. Code §51(b).

43. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act.  Cal. Civ. Code, § 51(f).

44. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, failing to comply with the ADA with respect to its reservation policies and practices.

45. Because the violation of the Unruh Civil Rights Act resulted in difficulty and discomfort for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. See Civ. Code § 52(a).

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. For equitable nominal damages under the ADA.

3. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000 for each offense.

11

1        4. Reasonable attorney fees, litigation expenses and costs of suit, pursuant

2    to 42 U.S.C. § 12205; and Cal. Civ. Code § 52(a).

3

4    Dated: March 10, 2021        CENTER FOR DISABILITY ACCESS

5

6                         By:   /s/ Russell Handy

                           Russell Handy

7                         Attorney for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

First Amended Complaint                8:20-cv-02450-DOC-DFM